O’Neall, J.
By the 5th section of the Act of Congress of 1797, (1 Story Laws of the U. States, 465,) it is provided, “that where any revenue officer, or other person, 'hereafter becoming indebted to the United States, by bond or otherwise, shall become insolvent, or where the estate of any deceased debtor, in the hands of executors or administrators, shall be insufficient to pay all the debts due from the deceased, the debt due to the United States shall be first satisfied; and the priority hereby established shall be deemed to extend, as well to cases in which a debtor not leaving sufficient property to pay all his debts, shall make a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed or absent debtor shall be attached by process of law, as to cases in which an act of legal bankruptcy shall be committed.”
The 65th section of the Act of 1799, (1 Story’s Law of the U. S. 630,) after directing a suit to be brought on any bond for duties which may not be paid on the day on which it becomes due, directs that “ in all cases of insolvency, or where any estate in the hands of executors, administrators or assignees, shall be insufficient to pay all the debts due from the deceased, the debt or debts due to the United States on any such bond or bonds shall be first satisfied. ” The proviso declares, that if the principal be insolvent, or if he be dead, and his estate be insufficient to pay all his debts, and the surety or his representatives shall pay the money due on such bonds to the United States, then that the said surety or his representatives “ shall have and enjoy the title, advantage, priority or preference for the recovery and receipt of the said moneys out of the estate and effects of such insolvent or deceased principal, as are reserved and secured to the United States.
Under these two acts, the United States were entitled to be preferred and first satisfied out -of the estates and effects of Weyman. Goodman and Lothrop, under the last act, the security paying the debt, would be entitled to be preferred and first satisfied out of the estate and effects of the insolvent principal.
*But it is perfectly clear that it does not give to him the prefer^bbJ enee of the United States to be paid out of the estate of his co-security. The case of Pollock v. Pratt & Haney, 2 Wash. Cir. Court Rep. 490, is a direct authority upon the point. Judge Washington said, “ In regard to the advantages reserved to the surety in the custom *207 house bond, the provisions are confined to the estate and effects of his insolvent or deceased principal.” In that case the claim was by the surety against the assignees of one of the assignees of an insolvent principal in a custom-house bond, who had received a large sum of his assignor’s estate, mingled it with his own, and then became insolvent and assigned to the defendants. Under such circumstances, Judge Wash-' ington ruled that the plaintiff was not entitled to be preferred, and used the words which I have quoted. If in such a case the plaintiff was not entitled to be substituted in the place of the United States, it would seem to follow pretty clearly, that the claim of the co-surety, Goodman’s assignees, to be substituted in the place of the United States, against the administrator of William" Price, the assignee of Lothrop, the co-surety, cannot be allowed to prevail. For here as well as there, it may be said that the provisions of the act of Congress do not cover the case made.
But it is said, concede this to be true, and still the assignees of Goodman, on the general principles of Equity, have the right to stand in the place-of the United States, and the case of Aldrich v. Cooper, 8 Ves. 381, was cited and relied upon in support of that position ; but I think it does not sustain it. This is not a case of a party having two funds ; and therefore the equity rule laid down in Aldrich v. Cooper, that in such a case a party shall not by his election disappoint the party having only one fund, cannot apply. By the custom-house bond, the United States had the right to expect payment from any one of the three obligors, Weyman, Goodman or Lothrop. But they could not be forced by Goodman to accept his part of the bond, and look to Lothrop for the balance. It was an entire debt due by all or either of the obligors. Payment of it by one of the co-sureties entitled him to contribution as for so much money paid, laid out and expended; and the debt thus due to him by his co-surety, is a mere simple contract. This was ruled by Lord Chancellor Eldon, in Copps v. Middleton, 1 T. & Russ. 224. In that case, the Lord Chancellor stated the conclusion, which is, I think, directly applicable to this He said, “there has been a case cited, where, upon the ^general ground that a surety is entitled to the benefit of r^ocir all securities which the creditor has against the principal, it seems L to have been thought that the surety was entitled to be, as it were, a bond creditor by virtue of the bond. I take it to be exceedingly clear, if at the time a bond is given a mortgage is also made for securing the debt, that the surety, if he pays the bond, has a right to stand in the place of the mortgagee, and as the mortgagor cannot get bach his estate again without a conveyance, that security remains a valid and effectual security, notwithstanding the bond debt is paid; but if there is nothing but the bond, my motion is, that as the law says that the bond is discharged by the payment of what was due upon it, the bond is gone and cannot be set up.” The bond to the United States was paid by Godman’s assignees; in the language of Lord Eldon, “ it is gone and cannot be set up.” If the bond is gone, it follows that the preference given to the United States to be first paid and satisfied out of the estates and effects of all the obligors is also gone. The surety has none of the rights of preference of the United States, except as against the principal. The same reasoning applies to the judgment which was a joint debt against Weyman, Lothrop and Goodman. Satisfaction of it by any one of the *208 parties, was a satisfaction of it against them all; the law, without any further act to be done, ended its legal operation. If there had been separate judgments against each of the obligors, then it might have been that the satisfaction of one of the judgments against one of the sureties by himself, would not have been necessarily a satisfaction of all the other judgments, unless it was so intended by the surety making the payment.
It is ordered and decreed, that Chancellor Johnston’s decree be affirmed, (a)
Johnson, J., concurred.

 See Perkins v. Kershaw, 1 Hill’s Oh. 351.